# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black colored LG cell phone, IMEI 353855-09-090869-0<br>and a grey colored SAMSUNG cell phone MODEL:<br>SM-J327T1 with IMEI: 355417/09/971739/6 | )<br>)<br>)<br>)<br>)<br>) | Case No. 2:18-MJ-175 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the ___NORTHERN___ District of ___TEXAS___, there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, USC, Section 841(a)(1) | Possession with Intent to Distribute a Controlled Substance. |

The application is based on these facts:

SEE AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jose Barron, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-21-18

_____
*Judge's signature*

City and state: AMARILLO, TEXAS

LEE ANN RENO, U.S MAGISTRATE JUDGE
*Printed name and title*

## Attachment A

## Property to Be Searched

Black colored LG cell phone, IMEI 353855-09-090869-0 and a grey colored SAMSUNG cell phone MODEL: SM-J327T1 with IMEI: 355417/09/971739/6

## ATTACHMENT "B"
## LIST OF ITEMS TO BE SEARCH FOR AND SEIZED

### Property to be Searched and Seized

All electronic records relating to violations of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), including:

Text messages;
E-mail messages;
Voice mail messages;
Internet browsing history;
Historical location (GPS) data;
Photos;
Video;
Audio files;
Calendars;
Word processing documents;
Spreadsheets;
Text files;
Contact names and telephone numbers;
Incoming and outgoing call logs; and
Forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when it was used.

2:18-MJ-175

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANT

I, Jose Barron, a Task Force Officer with the Drug Enforcement Administration, do depose and say:

**Affiant's Qualifications**

1. I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) since December 2017. I have received basic training from the Potter County Sherriff's Office, Amarillo Police Department, Texas Department of Public Safety (DPS), Regional Counterdrug Training Academy, Texas Narcotics Officers Association and several other organizations. I am currently assigned as a Task Force Officer (TFO) with the DEA's Amarillo High Intensity Drug Trafficking Area (HIDTA) Group. My duties include, but are not limited to, investigating drug trafficking organizations responsible for the money laundering, smuggling, distribution, and transportation of quantities of illegal controlled substances into and across the United States. Concurrent with my assignment to the Amarillo DEA Task Force, I am employed as a Deputy with the Potter County Sheriff's Office and have been so employed for the past 6 years. For the last two years at the Potter County Sheriff's Office, I have been assigned to the Amarillo High Intensity Drug Trafficking Area (HIDTA) Group. I have personally initiated and conducted numerous narcotics investigations.

This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about the matters related to the warrant.

## Source of Affiant's Information

2. I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources:

    A. my experience investigating the distribution of illegal controlled substances and the laundering and transportation of drug proceeds;

    B. oral and written reports, and documents about this investigation that I have received from members of the DEA and Texas Department of Public Safety;

    C. discussions I have had personally concerning this investigation with federal and state investigators who are experienced in investigating criminal organizations involved in drug trafficking;

## Purpose of this Affidavit

4. The information contained in this Affidavit is submitted for the sole purpose of supplying probable cause for the issuance of a search warrant for the subject electronic communications device. As shown in the following paragraphs, this device is being used in furtherance of narcotics trafficking. There is probable cause to believe that evidence and instrumentalities of the offenses described herein continue to be located in the subject electronic communications device. The warrant is also being sought to discover evidence pertaining to: (1) possession with intent to distribute a controlled substance namely methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

**Device to be Searched**

5. I declare that the facts contained in this Affidavit show that there is probable cause to search the following electronic communications device:

    a. There is in Potter County, Texas, are two suspected electronic communications devices (hereinafter referred to as "suspected devices") and more specifically described as a black colored LG cell phone, IMEI 353855-09-090869-0 and a grey colored SAMSUNG cell phone MODEL: SM-J327T1 with IMEI: 355417/09/971739/6. The suspected devices are currently secured at the Amarillo HIDTA office located at 205 Southeast 5th Avenue, Amarillo, Texas.

    b. The suspected devices are owned by or were in the possession of Esmervi Carone Rodriguez on October 3, 2018.

    c. The suspected devices which contain the data and information sought are currently in the care, custody, control and management of the members of the Amarillo HIDTA Task Force.

**Electronic Storage and Forensic Analysis**

6. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number,

date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books or contacts;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; recording and maintaining important notes and records; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

8. There is probable cause to believe that things that were once stored on the devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that files or remnants of such files can be recovered from electronic devices months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can

be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on an electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, an electronic device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, storage media on these electronic devices contain electronic evidence of how a device has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Users of electronic devices typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

9.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the electronic devices were used, the purpose of its use, who used it, and when it was used. There is probable cause to believe that this forensic electronic evidence might be on the electronic device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use.  System files can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

### Facts in Support of Probable Cause

Affiant does believe that searching the devices identified in this affidavit is likely to produce evidence that the offenses described herein has been, is, or will be committed and that the person or persons and/or the suspected party has committed, is committing, or will commit the offenses.

10.  On October 03, 2018 at approximately 11:57 a.m. Texas Department of Public Safety Corporal Darrin Bridges was conducting patrol along Interstate 40 in

Carson County, Texas. Corporal Bridges observed a white 2007 Mercedes GL450 bearing temporary Arizona tag 131N672 traveling eastbound on Interstate 40 near mile marker 100. Corporal Bridges observed the driver of the Mercedes commit a traffic violations. Corporal Bridges observed the driver of the Mercedes following too closely to another vehicle. Corporal Bridges conducted a traffic stop with the Mercedes and found the Mercedes was only occupied by the driver identified later identified as Esmervi Carone Rodriguez. Upon contact Corporal Bridges informed Rodriguez why he was being stopped, asking for driver license and insurance. Rodriguez was identified with a Kentucky driver's license, DL# C14490891, Esmervi Carone Rodriguez DOB 9/24/1983. Rodriguez provided insurance and registration that were all obtained on the same date 8/31/2018. During the transaction between Corporal Bridges and Rodriguez of the insurance and registration, Rodriguez seemed more nervous than the innocent motoring public. Rodriguez had shaking hands when handing over the documents to Corporal Bridges along with heavy breathing. Corporal Bridges also stated he observed a small socket wrench in the glove box when Rodriguez was gathering vehicle documents. This seemed odd to Corporal Bridges due to the fact there were no other tools in the vehicle. Based on Corporal Bridges training and experience Corporal Bridges stated he had known items like this were used to access compartments within a vehicle that conceal contraband. Corporal Bridges asked Rodriguez to step out of the vehicle and to have a seat in the front passenger seat. During the interaction with Rodriguez in the vehicle, Corporal Bridges noticed that Rodriguez still seemed very nervous. Corporal Bridges stated he could see Rodriguez's heart beat through his abdomen area. At this point

Corporal Bridges called Sergeant Oscar Esqueda due to him being a Spanish speaker to assist with Rodriguez to explain to him the reason for the stop. During the conversation Rodriguez explained he had purchased the vehicle in Arizona and had taken the vehicle back to have the air ride system fixed. Rodriguez stated when arriving to Arizona he was told by the auto shop they could not get to the vehicle. It seemed like a long way to travel to get the vehicle fixed and not have already set up a time with a mechanic to get it fixed. The vehicle was also a private sale, and not from a dealer.

11.     After Rodriguez signed the warning Sergeant Esqueda asked Rodriguez for consent to search the vehicle. Rodriguez gave verbal consent for a search of the vehicle. Corporal Bridges and Corporal Dawson started in the rear cargo area where Corporal Bridges began seeing signs of tampering to the rear quarter panels. Covers to the screws attaching the quarter panel were removed and the screws had wear marks. When removing the storage insert on the driver side a large void was present. After looking further into the void there were brown and clear taped bundles of suspected narcotics. The rear passenger quarter panel was also removed and some more bundles were found with the brown and clear tape. Thirty bundles of plastic wrapped bundles of a crystal like substance were found in both quarter panels. The bundles weighed approximately 36 pounds. The crystal like substance field tested positive for the presence of methamphetamine. The Affiant knows this amount of methamphetamine is consistent with large scale distribution and is much more then would be possessed for personal use.

12.     Texas Department of Public Safety Special Agent (SA) Damon Sanford and Affiant responded to Panhandle, Texas to assist with investigation. Affiant and TX DPS

S/A Damon Sanford conducted a recorded interview with RODRIGUEZ. RODRIGUEZ was read his constitutional rights by Affiant in Spanish prior to being asked any questions. During the interview, Rodriguez admitted to going to Arizona to get his vehicle fixed due to an air ride system issue. Rodriguez also admitted he did not speak with anyone about the vehicle, but decided to turn around and head back to Kentucky, only staying one night in Arizona. RODRIGUEZ also admitted it took him three (3) days to arrive to AZ. During a search of the Mercedes, Rodriguez was found to be in possession of a black colored LG cell phone, IMEI 353855-09-090869-0 and a grey colored SAMSUNG cell phone MODEL: SM-J327T1 with IMEI: 355417/09/971739/6 which were located in the vehicle. During the interview, the Affiant did receive verbal consent to go through the cellphones from Rodriguez. On the LG cellphone, a Hotel was on the screen of google map showing the Renaissance Phoenix Downtown. After seeing the Hotel, Affiant asked Rodriguez if this was the place he stayed in Phoenix, Arizona. Rodriguez stated if that was in Arizona. Rodriguez was informed by Affiant it was on his cellphone and that no one had touched his phones. The LG cellphone also had several text messages sent from phone number 1-480-717-0447 that asked Rodriguez to deposit $7,000.00 into Noraida Sanchez Martinez's bank account. On the same text messages, it also listed Leonardo Avila Rodriguez and his phone number 786-580-2507. The text messages also had a photo of a money receipt containing the name of Leonardo Avila Rodriguez. Below these text message contained another photo of a Western Union receipt with tracking number 542-456-1050 saying "this is your number." As the text continued, the person texting instructed Rodriguez to "put it under my name Alien Turcaz Diaz."

The person then asked Rodriguez by text message to send the name of his woman. Rodriguez responded, "Yaquelin Ferrera Azahares." This name was listed as the emergency contact for Rodriguez when being booked into the Randall County Detention Center. The person then texted Rodriguez stating, "I call you in an hour to tell you about some quick business." In a subsequent text, another receipt is photographed in a text message this time containing Alien Turcaz Diaz's name for the amount of 1,600.00 USD. These types of transactions are usually used to pay individuals when transporting narcotics for payment. At one point in the interview, Rodriguez stated he wanted an attorney and the interview was terminated.

14.     The Affiant took possession of the black LG cellphone and the Samsung cellphone transported it to Amarillo, Texas for evidence. During the interview the Affiant was transporting the LG cellphone it was obvious that Rodriguez was utilizing the LG cellphone as a GPS device to provide directions. Affiant believes the LG cellphone and the Samsung cellphone will contain information about Rodriguez's travels while transporting the methamphetamine.

15.     The Affiant from being involved with countless investigation involving the smuggling and transportation of controlled substances into and across the United States knows it is the common practice for couriers to utilize a cell phone to maintain contact with the owner of the controlled substance for whom the couriers is working for. The owners of the controlled substance are placing the courier in possession of large amounts of a controlled substance with a whole sale value often times in the hundreds of thousands of dollars and a street level value often times in the millions of dollars. The

owner of the controlled substance directing the courier will most often not be the true owner of the narcotics and will most certainly have someone to answer to above them. The Affiant knows from training and experience that the owner of the controlled substance is risking heavy consequences including physical injury or death to them or even their family if the controlled substance becomes missing. The Affiant when searching cellular phones in possession of narcotics couriers in the past has found on nearly each and every occasion the narcotics couriers' cellular device contained evidence of their narcotics trafficking activity. This evidence included but wasn't limited to photographs, videos, text messages, emails, location data, call logs and contacts. The information unveiled the courier's illegal activities and other co-conspirators that were involved with the trafficking of the controlled substances. The Affiant from training and experience has found the courier of the controlled substance normally needs to check in with the person whom is directing them at least once a day if not several times a day. The Affiant knows in some cases the person directing the courier will even track the courier utilizing the cellphone. In the investigations where the Affiant has found the courier doesn't need to check frequently is where the courier has made countless deliveries for the drug trafficking organization and is well trusted. In these cases the courier at a minimum still had the contacts and in their cellular device for the person directing them to deliver the narcotics for and or the person they were delivery the narcotics to.

## Conclusion

Your Affiant submits that based upon the above facts, there is probable cause to believe that Esmervi Carone Rodriguez has committed the offenses of Possession with Intent to Distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).  I further believe that there is probable cause to believe that evidence, contraband, fruits of crime, items illegally possessed, and property designed for use, intended for use, and used in committing this crime (as itemized in Attachment B to the Application for Search Warrant) will be found in the black colored LG cell phone, IMEI 353855-09-090869-0 and a grey colored SAMSUNG cell phone MODEL: SM-J327T1 with IMEI: 355417/09/971739/6.  Accordingly, I respectfully ask for a warrant to search the premises under Rule 41 of the Federal Rules of Criminal Procedure.

_____
Jose Barron
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO BEFORE ME on this 21st day of November, 2018.


_____
Lee Ann Reno
UNITED STATES MAGISTRATE JUDGE


_____
Anna Marie Bell
Assistant United States Attorney